IN UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE ALFORD,

          Plaintiff,

v.

HERON HOUSE ALF, LLC, d/b/a HERON
HOUSE OF LARGO, MARY BETH SKOYEC,
and CELLE BROWN,

          Defendants.

Case No.  8:20-cv-01033

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michelle Alford ("Plaintiff" or "Alford") sues Defendants, Heron House ALF LLC, d/b/a Heron House of Largo ("Heron House"), Mary Beth Skoyec ("Skoyec") and Celee Brown ("Brown") and states as follows:

### CAUSES OF ACTION

1.    This is an action brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.§ 201, *et. seq*. (FLSA), Florida Statute, § 448.102 and Florida common law.

### PARTIES

2.    Plaintiff Alford is an individual who currently resides in Pinellas County, Florida.

3.    Defendant Heron House is a New York Limited Liability Company and does business at 2050 East Bay Drive, Largo, Florida 33771.

4.    Defendant Skoyec is an individual who formerly managed the operations of Defendant Heron House and resides in Pinellas County, Florida.

5.    Defendant Brown is an individual who is currently employed by Defendant Heron House and resides in Pinellas County, Florida.

## JURISDICTION AND VENUE

6.     Subject matter Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 29 U.S.C. §216 (b) because this action involves a federal question under the Fair Labor Standards Act.  Jurisdiction over the state law claim set forth herein is proper pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

7.     Personal jurisdiction and venue are proper in the United States District Court for the Middle District of Florida because at all times material, Defendants resided in and/or conducted business in, and all significant events giving rise to Plaintiff's claims occurred within Pinellas County, Florida.

8.     Venue is proper in the Tampa Division under Local Rule l.02(b)(5) since the action accrued in Pinellas County, Florida.

## GENERAL ALLEGATIONS

9.     Defendant Heron House operates a senior living facility in Largo, Florida.

10.     At all times material hereto, Defendant Heron House was "an enterprise engaged in commerce" and therefore is a covered employer subject to the wage and hour requirements of the FLSA including the payment of minimum wages and overtime compensation to non-exempt employees.

11.     At all times relevant, Defendant Heron House had annual gross revenues of at least $500,000.00.

12.     At all times relevant, Defendant Heron House employed two or more individuals who, in the course and scope of their employment, handled items that were manufactured outside of Florida and moved through interstate commerce.

13.     At all times relevant, Defendant Heron House employed two or more individuals who routinely handled food items that were manufactured outside of Florida and moved through interstate commerce.

14.     At all times relevant, Defendant Heron House employed two or more individuals who routinely handled and utilized electronic devices and office supplies that were manufactured outside of Florida and moved through interstate commerce

15.     At all times relevant, Defendant Heron House employed two or more individuals who handled medical supplies that were manufactured outside of Florida and moved through interstate commerce.

16.     At all times material hereto, Defendant Skoyec was also an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

17.     Defendant Skoyec managed, oversaw and operated Heron House as a business enterprise within the meaning of 29 U.S.C. § 203 (s) (1) of the FLSA.

18.     Defendant Skoyec exercised complete dominion and control over Plaintiff's wages, hours, and working conditions.

19.     Defendant Skoyec devised and implemented all pay policies of the company including those policies directly affecting Plaintiff's compensation.

20.     Plaintiff Alford was hired by Defendant Heron House as a Resident Aid on October 25, 2015.

21.     Approximately three months later, she was promoted to the position of Med Tech.

22.     Plaintiff took a maternity leave of absence from approximately August 2016 through May 2017.

23.     In May 2018, Alford was promoted to Memory Care Coordinator.

24.     Plaintiff was later promoted to Clinical Coordinator in December 2018, which was formalized in January 2019.

25.     At all times material hereto, Alford was paid hourly for her services.

26.     Plaintiff was a non-exempt employee of Defendants and was therefore entitled to payment of at least the current federal minimum wage for all hours worked.

27.     Throughout her employment, Alford was customarily required to work in excess of forty (40) hours in a workweek.

28.     However, Defendants failed to pay Alford federally mandated overtime compensation (*i.e.,* one-and-one half times her regular hourly rate) for each hour worked in excess of 40 in a workweek.

29.     In fact, Defendants willfully flouted their responsibility to pay overtime compensation by instructing Alford and other employees to not record their overtime hours such that they were forced to "work off the clock."

30.     Additionally, Defendants required Alford to be on-call for work twenty-four hours per day/7 days per week, having informed her that being on-call was a part of her job description.

31.     While on call, Alford was completely unable to use the time effectively for her own purposes and was constantly interrupted.

32.     Nevertheless, Alford was never compensated for *any* of the on-call time.

33.     Alford first complained to Defendant Heron House about this unlawful pay practice in or around March 2019.

34.     Specifically, she complained to "Paul," the VP of Operations who indicated that the company intended to place Alford on a salary at $640/wk.

35.     Though Alford was initially satisfied with the response to her complaint, Heron House never fulfilled its promise and Alford continued to receive an hourly wage rate.

36.     In late July/early August, Alford contacted Shalimar Jones in Corporate Compliance to complain about the pay and time issues as well as the retaliation from Skoyec and Brown.

37.     On or around August 5, 2019, Alford subsequently complained to "Gerard," Paul's successor to the VP of Operations position.

38.     Gerard indicated he would speak with the Executive Director, Defendant Skoyec, about the matter.

39.     Skoyec was incensed that Alford went to the VP of Operations to complain about the issue.

40.     Skoyec had historically been pleasant toward Alford; however, in this instance, her tone became extremely stern and intimidating.

41.     Despite her evident ire toward Alford, Skoyec indicated she would contact Gerard and address the overtime and on-call pay issues.

42.     Contrary to her representations, Skoyec completely failed to address the issue of back pay, on-call time, and overtime for hours already worked.

43.     The company had a written policy of compensating Alford for four hours per on-call shift. Skoyec orally confirmed to Alford that the company's policy was for Alford to be

CALCIANO PIERRO, P.L.L.C.

compensated for four hours per on-call shift, but that the company could not afford it moving forward.

44.     In retaliation for her complaints of the unlawful pay practices, Skoyec also stripped Alford of various job duties and reduced her work hours.

45.     Approximately a week later, Alford experienced further retaliation for her protected complaints.

46.     In this regard, Human Resources employee, Defendant Brown, solicited disparaging and defamatory statements from another employee in order to contrive a basis for terminating Alford's employment.

47.     Jones requested that Alford follow-up with a written complaint, which Alford subsequently submitted on August 7, 2019.

48.     Prior to reporting the matter to Jones, Alford only had a single write-up for a minor infraction in her personnel file.

49.     After submitting her written complaint on August 7, 2019, Alford was written up three times within a month by Brown.

50.     The baseless write-ups were specifically designed to lay the groundwork to terminate Alford's employment in retaliation for her complaints of unlawful pay practices.

51.     Alford was terminated by Skoyec and Brown at 11 a.m. on Sept. 16, 2019.

52.     Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

**COUNT I**
*(Breach of Contract and Entitlement to Attorney's Fees under Fla. Stat. §*
*448.08- Defendant Heron House)*

53.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 51.

54.     Defendant Heron House agreed to pay Plaintiff the equivalent of four (4) hours at her applicable pay rate for each period she served on-call.

55.     Plaintiff performed all conditions precedent to her receipt of the on-call pay.

56.     However, Defendant Heron House failed to pay Plaintiff the promised on-call pay for any of her on-call work periods.

57.     Defendant Heron House's failure to pay Plaintiff her on-call pay constitutes a breach of a contract.

58.     Defendant Heron House's breach has damaged Plaintiff by denying her compensation for the on-call work periods.

59.     Because the unpaid compensation constitutes unpaid wages, Plaintiff is entitled to recover her reasonable attorney's fees and costs pursuant to Fla.Stat. § 448.08.

WHEREFORE, Plaintiff demands judgment against Defendant Heron House for unpaid contractual on-call pay plus prejudgment interest together with the costs of suit and reasonable attorney's fees pursuant to Fla.Stat. § 448.08, and such other and further relief that the Court deems just and proper.

**COUNT II**
**(Failure to Pay Overtime Wages in violation of the FLSA, 29 U.S.C. § 207-**
**Defendants Heron House and Skoyec)**

59.    Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 51.

60.    During the relevant time period, Plaintiff was a non-exempt employee under the FLSA and was therefore entitled to overtime pay at time and one-half her regular rate of pay for all hours worked in excess of forty (40) in a workweek.

61.    During the relevant time period, Defendants Heron House and Skoyec routinely required Plaintiff to work in excess of forty (40) hours in a workweek

62.    In violation of the FLSA, Defendants Heron House and Skoyec willfully failed to pay Plaintiff time and one-half her regular rate of pay for overtime hours worked.

63.    As a direct result of Defendants' violation of the FLSA, Plaintiff has suffered damages in the way of unpaid overtime compensation.

64.    Defendants Heron House and Skoyec did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff.

65.    Plaintiff is entitled to recover from Defendants Heron House and Skoyec, jointly and severally, the unpaid overtime compensation, and an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff Michelle Alford demands judgment against Defendants Heron House and Skoyec, jointly and severally, for unpaid overtime compensation, statutory liquidated damages, prejudgment interest together with the costs of suit and reasonable attorney's fees

(pursuant to § 216(b) of the FLSA), and such other and further relief that the Court deems just and proper.

## COUNT III
### (FLSA Retaliation, 29 U.S.C. § 215- All Defendants)

66.     Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 51.

67.     Plaintiff engaged in protected conduct under the FLSA when she made internal complaints, both written and oral, to Defendants regarding the wrongful practice of failing to pay her overtime compensation for all hours worked in excess of 40 in a workweek.

68.     Defendants responded to Plaintiff's protected conduct by terminating her employment.

69.     Defendants conduct in this regard amounted to a willful violation of the anti-retaliation provision of the FLSA.

70.     On account of the retaliatory discharge, Plaintiff has incurred lost wages and benefits.

71.     The retaliation has also caused Plaintiff emotional pain and suffering for which she is entitled to compensatory damages.

72.     Plaintiff states that reinstatement would be impossible or impracticable such that an award of front pay in lieu of reinstatement would be appropriate.

WHEREFORE, Plaintiff demands judgment against Defendants Heron House, Skoyec and Brown, jointly and severally, for back pay, front pay in lieu of reinstatement, liquidated damages, compensatory damages, prejudgment interest, together with the costs of suit and reasonable

attorney's fees under the FLSA, and such other and further relief that the Court deems just and proper.

**COUNT IV**
**(Violation of Florida's private whistleblower act, Fla.Stat., § 448.102-**
**Defendant Heron House)**

73.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 51.

74.     Plaintiff engaged in protected activity under Fla. Stat., Section 448.102 when she orally and in writing objected to Defendant Heron House's unlawful pay practices which included the failure to pay for her on-call periods as well as overtime compensation for all hours she worked in excess of 40 in a workweek.

75.     The failure to pay overtime compensation violated the FLSA.

76.     The failure to pay Plaintiff for her on-call periods constituted a violation of Pinellas County, Florida's Wage Theft Ordinance, Chapter 70.

77.     In direct response to Plaintiff's objections to the unlawful pay practices, Defendant Heron House, through its agents, retaliated against Plaintiff by way of a pattern of adverse actions culminating in termination of her employment.

78.     Defendant Heron House's retaliatory actions constitute a violation of Fla. Stat., § 448.102.

79.     Due to the retaliatory discharge, Plaintiff has incurred lost wages and benefits.

80.     Plaintiff has also suffered emotional distress as a result of the retaliatory conduct.

81.     Plaintiff is entitled to the remedies afforded by Fla. Stat., § 448.103 as well as recovery of her reasonable attorneys' fees and costs pursuant to Fla. Stat., § 448.104.

82.     Plaintiff states that reinstatement would be impossible or impracticable such that an award of front pay in lieu of reinstatement would be appropriate.

WHEREFORE, Plaintiff Alford demands judgment against Defendant Heron House for backpay, compensatory damages, front pay, punitive damages, prejudgment interest, together with the costs of suit and reasonable attorney's fees under Fla. Stat., § 448.104, and such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, a demand a trial by jury as to all issues triable as of right,

Dated this 4th day of May 2020.                    Respectfully submitted,

*s/ Brian K. Calciano*
R. MICHAEL PIERRO, JR.
Florida Bar No. 0013023
mikepierro@rmpemploymentlaw.com
**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 310
St. Petersburg, Florida 33701
(727) 201-2573 | (727) 491-7072 – Fax

and

BRIAN K. CALCIANO
Florida Bar No. 108879
brian@flemploymentlaw.com
**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 310
St. Petersburg, Florida 33701
(727) 202-4516 | 727-478-4580 – Fax

*Counsel for Plaintiff*